710 S.E.2d 98

STATE of West Virginia, Defendant
Below, Appellee

v.

Charles J. JAMES, Plaintiff
Below, Appellant.

State of West Virginia, Defendant
Below, Appellee

v.

Jerry Lee Hedrick, Plaintiff
Below, Appellant.

State of West Virginia, Defendant
Below, Appellee

v.

Steven Daniels, Plaintiff
Below, Appellant.

Nos. 35557, 35561, 35762.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 26, 2011.

Decided May 2, 2011.

Shayne M. Welling, Wheeling, WV, for Appellant, James.

, Stephen G. Jory, Michael W. Parker, McNeer, Highland, McMunn and Varner, Elkins, WV, for Appellant, Hedrick.

Dwayne J. Adkins, Logan County Public Defender, Logan, WV, for Appellant, Daniels.

Robert D. Goldberg, Attorney General's Office, Charleston, WV, for Appellee.

Dennis V. DiBenedetto, Grant County Prosecutor, Petersburg, WV, for Appellee.

Laura J. Young, Attorney General's Office, Charleston, WV, for Appellee.

McHUGH, Justice:

The pending matter involves three cases consolidated for purposes of appeal[1] to address challenges to the constitutionality of West Virginia Code § 62–12–26 (2009), providing for a period of extended supervision following release from incarceration for certain sex offenders. While the particular arguments of the appellants vary, the collective basis for challenging the statute as facially unconstitutional on both federal and state grounds is that the statutory provisions constitute cruel and unusual punishment, violate due process rights, and serve to subject a person to double jeopardy. Upon completing our review of the arguments, relevant statutes, applicable case law and commentary, we conclude that West Virginia Code § 62–12–26 is not facially unconstitutional on these grounds. Additionally, we find no breach of constitutional principle or abuse of discretion in the application of the statute. Accordingly, the orders from the three affected circuit courts are affirmed.

## I. Factual Background

### A. State v. James

Appellant Charles J. James (hereinafter "Mr. James") was accused of giving alcohol to the thirteen-year-old sister of his girlfriend while he was alone with the minor in the girlfriend's apartment. The minor alleged that after giving her the alcohol Mr. James fondled and massaged her breasts.

1. The cases and orders appealed from include: *State v. James,* September 2, 2009, sentencing order of the Circuit Court of Ohio County in Case No. 09–F–47; *State v. Hedrick,* August 10, 2009, sentencing order of the Circuit Court of Mineral County in Case No. 09–F–58; *State v. Daniels,* July 20, 2010, sentencing order of the Circuit Court of Logan County in Case No. 08–F–77.

In response to the unwanted physical advances, the minor ran back to her home, told her mother what had happened and the mother immediately called the police. Mr. James was twenty-five years of age at the time of the incident.

■ After probable cause was found at the preliminary hearing to bind the case over for presentment to the grand jury, Mr. James entered a plea to first degree sexual abuse pursuant to *Kennedy v. Frazier*, 178 W.Va. 10, 357 S.E.2d 43 (1987).[2] According to the terms of the September 2, 2009, sentencing order of the Circuit Court of Ohio County, the trial court sentenced Mr. James to one to five years in the penitentiary for first degree sexual abuse pursuant to the penalty contained in West Virginia Code § 61–8B–7(b) (2006). After denying Mr. James' motion to find the extended supervision provisions of West Virginia Code § 62–12–26 unconstitutional, the lower court also imposed as part of the sentence thirty years of supervised release to commence after the prison term is served.

Mr. James filed an appeal of the sentencing order with this Court. He reiterates the arguments raised below regarding West Virginia Code § 62–12–26 being unconstitutional on the grounds that it: (1) violates double jeopardy prohibitions by allowing multiple punishments to be imposed for the same offense, (2) offends due process principles by removing the jury from the assessment of facts regarding the increased penalty of supervised release, and (3) constitutes cruel and unusual punishment. In the alternative, Mr. James argues that the trial court abused its discretion by imposing an unduly harsh thirty-year period of extended supervision.

### B. *State v. Hedrick*[3]

Appellant Jerry Lee Hedrick (hereinafter "Mr. Hedrick") was found guilty by a jury of two counts of sexual abuse in the first degree. The general facts underlying the felony convictions are that when Mr. Hedrick was fifty-five years old he made uninvited and unwanted sexual advances to a twenty-five year old employee when she asked for a day off. As charged in the indictment, Mr. Hedrick subjected the employee to sexual contact by touching her buttocks and her breasts without her consent and by use of forcible compulsion.

The August 10, 2009, order of the Circuit Court of Mineral County reflects that the convictions resulted in a sentence of one to five years in the penitentiary for each count of first degree sexual abuse, a fine totaling $20,000, and twenty-five years of supervised release upon completion of the jail term. The prison sentence and fine were made pursuant to the first degree sexual abuse statute (W.Va.Code § 61–8B–7), and the period of supervised release pursuant to the provisions of the extended supervision statute (W.Va.Code § 62–12–26).

In his petition for appeal to this Court, Mr. Hedrick alleged various grounds for reversal. Appeal was granted solely as to the constitutionality of West Virginia Code § 62–12–26. Mr. Hedrick's constitutional arguments center on due process and cruel and unusual punishment concerns.

### C. *State v. Daniels*

Appellant Steven Daniels (hereinafter "Mr. Daniels") was originally charged by criminal complaint in magistrate court with forty-eight counts of third degree sexual assault (W.Va.Code § 61–8B–5) and for distribution of obscene material to a minor (W.Va.Code

---

2. Under the provisions of syllabus point one of *Kennedy, supra*, "[a]n accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him." Mr. James maintains in his brief that he elected to enter a *Kennedy* plea to first degree sexual abuse carrying a penalty of incarceration of one to five years rather than going to trial and risk being

convicted of the additional offense of sexual abuse by a custodian for which he would face the further penalty of ten to twenty years of incarceration.

3. The indictment in this case was returned by the grand jury in Grant County, however, the jury trial was conducted in Mineral County in response to Mr. Hedrick's request for a change of venue.

§ 61–8A–4). As represented in the information contained in the record, Mr. Daniels was twenty years old when he engaged in sexual relations with a fourteen-year-old girl [4] which resulted in the minor becoming pregnant.

On October 6, 2008, Mr. Daniels tendered guilty pleas to one count of third degree sexual assault and one count of possession of a controlled substance with intent to deliver.[5] Initially, Mr. Daniels was sent to Anthony Center and sentencing was held in abeyance until June 30, 2010. At the June 30 sentencing hearing, the lower court expressed reservations with the provisions of West Virginia Code § 62–12–26, but declined to find the statute unconstitutional. According to the July 20, 2010, sentencing order of the Circuit Court of Logan County, the sentence Mr. Daniels received for the sexual assault conviction was one to five years in prison [6] pursuant to West Virginia Code § 61–8B–5 (2000) followed by ten years of supervised release pursuant to West Virginia Code § 62–12–26.

Mr. Daniels sought relief from this Court to prohibit enforcement of the supervised release portion of his sentence on the basis that the enhancement provisions of West Virginia Code § 62–12–26 are unconstitutional as cruel and unusual punishment. Although styled as a petition for writ of prohibition, the matter was granted for review by this Court as a direct appeal.

Because of the mutual statutory concern raised in the petitions for review in these three cases, they were consolidated for appeal purposes.

## II. Standard of Review

▪▪▪ These cases are on appeal from sentencing orders of circuit courts and primarily involve challenges to the constitutionality of a sentencing statute. As established in syllabus point one of *State v. Lucas,* 201 W.Va. 271, 496 S.E.2d 221 (1997), "[t]he Supreme Court of Appeals reviews sentencing

orders ... under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Further, "the constitutionality of a statute is a question of law which this Court reviews *de novo.*" Syl. Pt. 1, *State v. Rutherford,* 223 W.Va. 1, 672 S.E.2d 137 (2008). Nonetheless, we proceed with caution in examining constitutional challenges to legislative enactments because a statute is presumed to be constitutional.

> When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment.

Syl. Pt. 3, *Willis v. O'Brien,* 151 W.Va. 628, 153 S.E.2d 178 (1967). A fuller explanation of why judicial restraint is necessary when deciding the constitutionality of a statute is provided in syllabus point one of *State ex rel. Appalachian Power Co. v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351 (1965).

> In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.

With these standards and considerations in mind, we proceed with our examination of the arguments of the parties.

---

**4.** It is clear from the record that Mr. Daniels and the minor were involved in an on-going romantic relationship, and that Mr. Daniels considered the minor his girlfriend.

**5.** At the time of his arrest for the offenses involving the minor, Mr. Daniels had already been

charged with the crime of possessing marihuana with intent to deliver (W.Va.Code § 60A–4–401).

**6.** According to Mr. Daniels' brief, the lower court suspended his jail sentence and placed him on probation.

## III. Discussion

### A. West Virginia Code § 62–12–26 [7]

Central to all of the arguments raised in the pending cases is the extended supervision statute, West Virginia Code § 62–12–26 (hereinafter "§ 62–12–26"). Fundamentally, the statute provides that a court impose a period of extended supervision as part of the criminal sentence for certain specified offenses, and sets forth the manner in which the supervision is to be administered and enforced. The general operation of the statute is set forth in subsection (a) of § 62–12–26 as follows:

> Notwithstanding any other provision of this code to the contrary, any defendant convicted after the effective date of this section of a violation of section twelve [§ 61–8–12],[8] article eight, chapter sixty-one of this code or a felony violation of the provisions of article eight-b [§§ 62[sic]–8B–1 et seq.],[9] eight-c [§§ 62[sic]8C–1 et seq.][10] or eight-d [§§ 62[sic]–8D–1 et seq.][11] of said chapter shall, *as part of the sentence imposed at final disposition,* be required to serve, *in addition to any other penalty or condition* imposed by the court, a period of supervised release of *up to fifty years:* Provided, That the period of supervised release imposed by the court pursuant to this section for a defendant convicted after the effective date of this section as amended and reenacted during the first extraordinary session of the Legislature, 2006, of a *violation of section three [§ 61–8[B]–3][12] or seven [§ 61–8[B]–7],[13]* article eight-b, chapter sixty-one of this code and sentenced pursuant to section nine-a [61–8[B]–9a][14] of said article, shall *be no less than ten years:* Provided, however, That a defendant designated after the effective date of this section as amended and reenacted during the first extraordinary session of the Legislature, 2006, as a *sexually violent predator* pursuant to the provisions of section two-a [§ 15–12–2a], article twelve, chapter fifteen of this code shall be subject, in addition to any other penalty or condition imposed by the court, to *supervised release for life:* Provided further, That, pursuant to the provisions of subsection (g) of this section, a court may modify, terminate or revoke any term of supervised release imposed pursuant to subsection (a) of this section.

(emphasis added). Appearing somewhat imposing in its entirety—due in large part to the interjection of a number of statutory references and the insertion of three provisos qualifying the general premise—the meaning of the subsection is fairly straightforward. The general premise clearly states the intent of the Legislature that the *sentence imposed* for certain felony offenses must *include the additional penalty* of a period of supervised release of up to fifty years.[15] The first provi-

7. So as not to interrupt the flow of this discussion but to provide ready reference, the full text of West Virginia Code § 62–12–26 appears as an addendum to this opinion.

8. West Virginia Code § 61–8–12 contains the offense of incest.

9. Offenses in Chapter 61, Article 8B include: first, second and third degree sexual assault; first, second and third degree sexual abuse; imposition of sexual intercourse or intrusion on incapacitated persons.

10. Offenses in Chapter 61, Article 8C include: use of minors in filming sexually explicit conduct; distributing and exhibiting material depicting minors engaged in sexually explicit conduct.

11. Offenses in Chapter 61, Article 8D include: murder of a child by a parent, guardian or custodian, or other person by refusing or failing to supply necessities or delivering, administering or ingesting a controlled substance; death of a child by parent, guardian or custodian or other person by child abuse; child abuse causing injury; female genital mutilation; child neglect resulting causing injury; child neglect resulting in death; sexual abuse by a parent, guardian or custodian or person in position of trust; display, possession, transportation, distribution of child pornography by a parent, guardian or custodian.

12. West Virginia Code § 61–8B–3 contains the offense of first degree sexual assault.

13. West Virginia Code § 61–8B–7 contains the offense of first degree sexual abuse.

14. West Virginia Code § 61–8B–9a provides an enhanced sentence for certain sex offenses committed by someone eighteen years old or older against a victim twelve years old or younger.

15. Under the terms of § 62–12–26(g)(1) addressing termination of the period of supervised release, a minimum two year sentence of supervised release is contemplated.

so following this general premise establishes a mandatory minimum ten-year period of supervised release for offenders eighteen years or older convicted of first degree sexual assault and first degree sexual abuse of victims twelve years or younger. The second proviso extends the general fifty year limit to lifetime supervised release as part of the sentence of a person who is found to be a sexually violent predator. The third and final proviso notes that a court may modify, terminate or revoke any term of supervised release within the limitations specified in the statute. We further observe that by the terms of the statute, supervised release is not only an additional prescribed penalty, but it is different from established forms of punishment. W. Va.Code § 62–12–26(c) (indicating sentence of supervised release is served after terms of incarceration, parole or probation are satisfied).

The following chart depicts the convictions and sentences received in the cases before us:

| Offender | Felony Offense | Prison Sentence | Supervised Release |
|---|---|---|---|
| James | 1st degree sexual abuse [conviction by plea] | 1–5 years § 61–8B–7(b) | 30 years § 62–12–26(a) |
| Hedrick | 2 counts 1st degree sexual abuse [convictions by jury trial] | 2–10 years § 61–8B–7(b) | 25 years § 62–12–26(a) |
| Daniels | 3rd degree sexual assault [conviction by plea] | 1–5 years § 61–8B–5(2)(b) | 10 years § 62–12–26(a) |

We simply observe that none of the offenses involved a victim under the age of twelve and none of the appellants were declared to be sexually violent predators. Accordingly, neither the ten year minimum nor the lifetime mandatory statutory periods of supervised release were invoked. Additionally, only the imposition of supervised release sentences has occurred in these cases, and no attempt has been made to modify, terminate or revoke the supervised release portions of the sentences. Against this backdrop we proceed to examine the cruel and unusual punishment, due process, and double jeopardy arguments raised.

B.   Cruel and Unusual Punishment [16]

The three appellants maintain that West Virginia Code § 62–12–26 is facially unconstitutional as violating the cruel and unusual punishment provisions of the federal and state constitutions. They argue that the facial repugnancy of the statute is apparent in its excessive restraint on freedom for certain crimes. The focus of their complaint is the imposition of an *additional* non-discretionary punishment for certain offenses, primarily committed by sex offenders.[17] Their express concern lies in a person who is convicted of a sex offense facing not only a period of incarceration (or alternative sentence) and registration with the State Police as a sex offender,[18] but also a period of supervised release which may result in further incarceration if supervised release is revoked.[19] Thus they urge us to find that § 62–12–26 is constitutionally disproportionate.

The State maintains that the supervised release statute is constitutionally sound on its face as being part of the overall punishment the Legislature views as necessary to protect society from sexual offenders.

The reluctance of courts to apply the proportionality principle inherent in the cruel and unusual punishment clause has long been recognized by this Court. *State v. Vance,*

---

**16.** *See* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); W. Va. Const. art. III, § 5 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.")

**17.** The supervised release statute is applicable to offenses defined in West Virginia Code Chapter 61, Article 8–D involving child abuse which proscribes both sexual and nonsexual acts.

**18.** *See* W.Va.Code § 15–12–1 to 10.

**19.** *See* W.Va.Code § 62–12–26(g)(3).

164 W.Va. 216, 262 S.E.2d 423 (1980). Such reluctance is an expression of due respect for legislative authority. As observed by the U.S. Supreme Court in *Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), "[r]eviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes...." We further recognized in *Vance* that statutes prescribing punishment for crimes either causing or having the potential for causing violence to the person are more likely to be upheld. *Id.* at 233, 262 S.E.2d at 432.

■ Subjective and objective tests are considered in determining whether a sentence violates proportionality principles. The subjective test, set forth in syllabus point five of *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983), involves ascertaining whether the punishment is so disproportionate to the crime that it "shocks the conscience and offends fundamental notions of human dignity." The objective test was stated in syllabus point five of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981), as follows:

> In determining whether a given sentence violates the proportionality principle ..., consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

It was further noted in syllabus point four of *Wanstreet* that proportionality standards may apply to any criminal sentence, but that in reality they are applied to those sentences where no fixed maximum sentence is set by statute or a life recidivist statute is involved.

Appellants jointly maintain that the supervised release statute contains a punishment which shocks the conscience, is excessive and disproportionate to the degree and character of the offenses committed and is dissimilar to sentences for other comparable crimes.

■ We do not find that the statutorily prescribed periods of supervised release "shock the conscience", particularly since the supervision is a less restrictive restraint on personal liberty and the period of supervision is contingent upon the facts and circumstances of each case. It is obvious that the Legislature has determined that in order to adequately protect society, the crimes enumerated in the supervised release statute require community-based supervision and treatment over and above incarceration. Supervised release is a method selected by the Legislature to address the seriousness of these crimes to the public welfare and to provide treatment during the transition of offenders back into society with the apparent goal of modifying the offending behavior.

Similarly, we fail to see that the provisions of the supervised release statute are facially flawed because they unfailingly result in a disproportionate punishment in consideration of the nature of the offenses committed. The appropriate period of transition through supervised release in each case is largely left to the determination and sound discretion of the sentencing court. Further, although the sentence of supervised release may be dissimilar from sentences for other crimes, it is within the legislative prerogative to address societal problems through such policy determinations. Thus, any change in policy is a legislative rather than judicial concern.

In sum, we find that West Virginia Code § 62–12–26 is not facially unconstitutional on cruel and unusual punishment grounds in contravention of the Eighth Amendment to the United States Constitution or Article III, § 5 of the West Virginia Constitution.

■ Mr. James and Mr. Hedrick also maintain that even if the statute is not unconstitutional on its face as cruel and unusual punishment, the sentence of supervised release imposed in each of their cases is unconstitutionally disproportionate.[20] We do not agree.

**20.** Mr. James also argues that the supervised release sentence he received amounts to an abuse of discretion. We summarily note that the sentence imposed was within the statutory limit and was not based on any impermissible factor of which we have been made aware. Consequently, the sentence is not subject to appellate

Mr. James received a supervised release sentence of thirty years. His crime involved sexual assault of a thirteen-year-old child. This child was placed in such fear of the sexual advances of groping and fondling by her sister's boyfriend that she immediately ran out of the house and sought protection from her mother. The young girl, as a result of her tender age, falls within a class of victims that the laws of our State seek most to protect, especially with regards to sexually oriented offenses. The judge expressly chose not to impose the statutory maximum period for supervised release, by stating at the sentencing hearing that fifty years "would best be preserved for sexual offenses against infants, against toddlers." We find nothing unconstitutionally disproportionate in this sentence, especially since the period of supervised release may be modified after two years have been served.

Although Mr. Hedrick's case did not involve a minor, crimes of violence against the person were nonetheless involved. The twenty-five-old victim of Mr. Hedrick's uninvited and unwelcome sexual advances was an employee—a subordinate requesting time off from her boss. Mr. Hedrick took advantage of this disparate relationship and attempted to intimidate the young woman (who was thirty years his junior) in order to obtain sexual favors. The victim was so shaken by the experience that she never returned to the workplace. The jury hearing this evidence returned a verdict of guilty on two counts of sexual abuse in the first degree. The judge imposed a supervised release sentence of twenty-five years based on evidence and information, including an evaluation by a forensic psychiatrist. We note from the record before us that among the things indicated in this evaluation was that Mr. Hedrick was at least at a moderate risk for recidivism and reoffending. Based upon these circumstances, the supervised release sentence imposed in Mr. Hedrick's case is not unconstitutionally disproportionate.

## C. Procedural Due Process [21]

Mr. James is joined by Mr. Hedrick in challenging the constitutionality of the supervised release statute on procedural due process grounds. The thrust of their mutual argument is that the statute facially violates due process because it authorizes courts, by summary proceeding and without jury involvement, to impose an additional penalty of supervised release.[22] Mr. James further asserts that the statute is overly vague in its provisions regarding the administration of supervised release and thereby violates due process.[23]

Appellants base their first due process argument on the ruling of the U.S. Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The *Apprendi* case involved a situation where a defendant fired several gun shots into the home of an African–American family while stating that he did not want the family in his neighborhood because of their race. The defendant was charged under New Jersey law with second-degree possession of a firearm for unlawful purposes which carried a five to ten year prison sentence. The charge did not reference New Jersey's hate crime statute which provided that a judge may enhance a sentence if the judge found by a preponderance of the evidence that the defendant committed a crime with the purpose or intent of intimidating a person or group because of race. Discussing due process in light of enhanced sentencing, the Supreme Court in *Apprendi* held that "[o]ther than a prior conviction, any fact that increases the penalty for a crime beyond the *prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348 (emphasis added). Applying the reasoning in

---

review. Syl. Pt. 4, *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982).

**21.** *See* U.S. Const. amend V (no person shall "be deprived of life, liberty or property, without due process of law") and amend VI ("the accused shall enjoy the right to a ... public trial[ ] by an impartial jury"); W.Va. Const. art. III, § 10.

("No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers.").

**22.** *See* W.Va.Code § 62–12–26(a)

**23.** *See* W.Va.Code § 62–12–26(d) and (e).

*Apprendi* to § 62–12–26, Mr. James and Mr. Hedrick contend that the statute violates due process by authorizing judges, without jury involvement, to enhance punishment by imposing a second sentence of up to fifty years of supervised release for felony offenses which statutorily carry a penalty of incarceration.

The State maintains that the appellants misconceive what constitutes the statutory maximum period imposed for the offenses they committed. The State directs us to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), wherein the U.S. Supreme Court said that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 303, 124 S.Ct. 2531 (emphasis in the original). According to the State, no additional facts are required to be found by a court beyond the actual conviction for one of the designated offenses in order to impose a period of supervision pursuant to the terms of § 62–12–26. We agree.

■ As we observed at the outset of our discussion, § 62–12–26(a) reflects the legislative intent to impose a new and additional penalty to the sentence of a person convicted of certain enumerated offenses. The statute clearly states that "any defendant convicted ... [of the listed felony offenses] shall, *as part of the sentence imposed at final disposition,* be required to serve, *in addition to any other penalty or condition* imposed by the court, a period of supervised release...." W.Va.Code § 62–12–26(a) (emphasis added). Consequently, the statute does not offend due process as it provides that the existing sentences in the statutes defining the elements of the listed felony offenses be combined with the supervised release statute to form the statutory maximum sentence for each of these crimes. In order to impose a period of supervised release pursuant to § 62–12–26, a court need make no additional findings beyond the indisputable fact that a conviction for one of the designated offenses has occurred. As such, there is no new factual issue for a jury to decide. The length of time imposed is within the trial judge's discretion.

■ We likewise find no merit in the proposition that due process requires jury involvement whenever a sentencing judge considers the facts surrounding the conviction in order to determine an appropriate sentence. The Supreme Court in *Apprendi* stated that there is nothing that "suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." 530 U.S. at 481, 120 S.Ct. 2348 (emphasis in original). As related by the Second Circuit Court of Appeals in *United States v. White*, 240 F.3d 127, 136 (2nd Cir.2001), where factual determinations are "used to sentence the defendant to a sentence within the maximum allowed by statute, *Apprendi* is not controlling, and such determinations can be made by the court without violating the defendant's right to due process."

Mr. James also contends a violation of procedural due process on vagueness grounds. He states that under the terms of the statute a person on supervised release is not provided adequate notice of prohibited conduct because the terms of the statute allows for the creation of arbitrary and capricious supervised release rules having no standardized supervisory guidelines. He also maintains that this lack of statutory direction will result in selective and discriminatory enforcement.

■ In deciding a facial challenge to the vagueness of a criminal statute, this Court considers whether the subject statute is

set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by [the] statute and ... provide[s] adequate standards for adjudication.

Syl. Pt. 1, in part, *State v. Flinn*, 158 W.Va. 111, 208 S.E.2d 538 (1974). We are further guided by the following holding from syllabus point one of *State ex rel. Myers v. Wood*, 154 W.Va. 431, 175 S.E.2d 637 (1970):

There is no satisfactory formula to decide if a statute is so vague as to violate the due process clauses of the State and Federal Constitutions. The basic requirements are that such a statute must be couched in such language so as to notify a potential offender of a criminal provision as to what he should avoid doing in order to ascertain if he has violated the offense provided and it may be couched in general language.

In sum, vagueness challenges seek to vindicate two principles of due process: fair notice by defining prohibited conduct so that such behavior can be avoided, and adequate standards to prevent arbitrary and discriminatory law enforcement. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The State suggests that no issue of fair notice is raised with regard to a sentencing statute such as § 62–12–26. We find such suggestion contrary to established law. As stated in syllabus point two of *State v. Flinn* with regard to a constitutional vagueness challenge, "[s]tatutes involving a criminal penalty, which govern potential First Amendment freedoms or other similarly sensitive constitutional rights, are tested for certainty and definiteness by interpreting their meaning from the face of the statute." 158 W.Va. at 111, 208 S.E.2d at 539. The provisions of § 62–12–26 unquestionably involve a criminal penalty and the provisions challenged on vagueness grounds have the potential of interfering with the sensitive constitutional right of personal liberty. Consequently the conduct which may place a restraint on liberty must be adequately defined under the statute.

█ However, we do not find that the statute is facially vague in providing fair notice or adequate standards. The statute specifies that a written statement of the conditions of supervised release be provided to each defendant and that the statement be "sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required." W.Va.Code § 62–12–26(h). While the statute does not define uniform conditions of supervised release applicable to all cases, it defines the

breadth of the discretion of the sentencing judge. In addition to specifying mandatory conditions applicable to those receiving the mandatory minimum ten year or life term of supervisory release (§ 62–12–26(b)), the supervised release statute expressly provides that an offender placed on supervised release is "subject to any or all of the conditions applicable to a person placed upon probation...." W. Va.Code § 62–12–26(e); *see* W. Va.Code § 62–12–9 (statutory probation conditions). Through the probation statute, the Legislature has afforded trial courts the flexibility to fashion reasonable conditions appropriate to the circumstances in each case. *See* W. Va.Code § 62–12–9(b). Such flexibility does not amount to a vague law.

The United States Supreme Court explained in *Grayned v. City of Rockford* that "[a] vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." 408 U.S. at 108–109, 92 S.Ct. 2294. No such *policy* determination is left to judges under the terms of the supervised release statute. A judge has no choice when someone is convicted of one of the offenses listed in § 62–12–26 but to impose a term of supervised release subject to required or allowable legislatively prescribed conditions. As a result, the due process challenge of the supervised release statute on the grounds that it is facially void for vagueness must fail.

█ Based upon the above discussion, we conclude that West Virginia Code § 62–12–26 does not facially violate due process principles of the Fourteenth Amendment to the Constitution of the United States or Article III, Section 10 of the Constitution of West Virginia. The terms of the statute neither infringe upon a criminal defendant's right to jury determination of relevant factual matters, nor are the provisions of the statute regarding conditions of unsupervised release unconstitutionally vague.

**B. Double Jeopardy** [24]

Double jeopardy concern was raised solely by Mr. James. He asserts that the terms of

---

**24.** *See* U.S. Const. amend. V ("nor shall any   person be subject for the same offense to be

§ 62–12–26 violate double jeopardy provisions of the federal and state constitutions on two grounds. First, the statute imposes multiple punishments for the same offense, and second, the revocation segment of the statute expressly allows a court not to give credit for time served on supervised release.

Mr. James' first double jeopardy claim is that the statute is facially unconstitutional on due process grounds because the term of supervised release constitutes multiple punishments for the same offense. *See Conner v. Griffith*, 160 W.Va. 680, 682–83, 238 S.E.2d 529, 530 (1977) (finding federal constitutional double jeopardy provisions coextensive with double jeopardy protections under state constitution: protecting against a second prosecution for the same offense both after acquittal and after conviction, and against multiple punishments for the same offense). He maintains that the effect of the supervised release statute results in an improper *additional* sentence for the same act. We disagree with the meaning Mr. James assigns to double jeopardy protection.

■ As explained in syllabus point three of *State v. Sears*, 196 W.Va. 71, 468 S.E.2d 324 (1996), "the purpose of the Double Jeopardy Clause is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." The United States Supreme Court has similarly recognized that the double jeopardy protection against cumulative punishments "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature. Because the substantive power to prescribe crimes and determine punishments is vested with the legislature[,] ... the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) (citations omitted). Thus, it is well within the authority of the Legislature to intentionally prescribe multiple punishments for the same conduct.

Moreover, it is a common legislative practice for criminal statutes to provide multiple punishment through imposition of sentences containing both jail and fine penalties.

■ Turning to the language of § 62–12–26(a), we find the Legislature's intention is plainly stated. *See* Syl. Pt. 1, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997) (a statute plainly expressing legislative intent will be given full force and effect without court interpretation). The statute before us requires courts sentencing persons convicted of certain crimes enumerated in the statute to impose a term of supervised release *"as part of the sentence ... at final disposition."* By enacting § 62–12–26, the Legislature chose to exert its authority to prescribe supervised release as another type of punishment for certain felony offenses to be imposed in addition to existing penalties of incarceration and fines as part of the sentence. Thus the statute is not facially unconstitutional on double jeopardy grounds. Furthermore, the statute as applied did not violate double jeopardy principles because the courts in each of the cases at hand imposed supervised release upon conviction of felonies specified in § 62–12–26 within the parameters therein authorized by the Legislature.

■ As a result of the foregoing analysis we conclude that the imposition of the legislatively mandated additional punishment of a period of supervised release as an inherent part of the sentencing scheme for certain offenses enumerated in West Virginia Code § 62–12–26 (2009) does not on its face violate the double jeopardy provisions contained in either the United States Constitution or the West Virginia Constitution.

■ The second double jeopardy argument raised by Mr. James relates to an event which has not yet occurred in any of the cases on appeal. It involves a revocation provision of the supervised release statute. Mr. James specifically argues that § 62–12–26(g)(3) violates double jeopardy by failing to allow credit for time served while on super-

---

twice put in jeopardy of life or limb"); W.Va. Const. art. 3, § 5 ("No person shall ... be twice put in jeopardy of life or liberty for the same offence.").

vised release. The referenced provision reads as follows:

(g) *Modification of conditions or revocation.*—The court may:

\* \* \*

■ (3) Revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release without credit for time previously served on supervised release if the court, pursuant to the West Virginia Rules of Criminal Procedure applicable to revocation of probation, finds by clear and convincing evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this subdivision may not be required to serve more than the period of supervised release.

Emphasis added. The statute is written in permissive terms, so the possible consequences Mr. James fears are speculative at this point. Consequently, there is no justiciable controversy before us. As we observed in *Harshbarger v. Gainer*, 184 W.Va. 656, 659, 403 S.E.2d 399, 402 (1991), "state and federal ... [courts] have continuously maintained that they will not give 'advisory opinions.'" Relying on the U.S. Supreme Court decision in *Fleming v. Rhodes*, 331 U.S. 100, 67 S.Ct. 1140, 91 L.Ed. 1368 (1947), we went on to note in *Harshbarger* that litigants may only challenge the constitutionality of a statute insofar as it affects them. *Id. Accord State ex rel. ACF Indus., Inc. v. Vieweg*, 204 W.Va. 525, 533 n. 13, 514 S.E.2d 176, 184 n. 13 (1999) (recognizing that "this Court cannot issue an advisory opinion with respect to a hypothetical controversy"). As a result, we deem Mr. James' second double jeopardy concern prematurely raised.

## IV. Conclusion

For the foregoing reasons, we affirm the appealed September 2, 2009, sentencing order of the Circuit Court of Ohio County, the August 10, 2009, sentencing order of the Circuit Court of Mineral County and the July 20, 2010, sentencing order of the Circuit Court of Logan County.

Affirmed.

## ADDENDUM

West Virginia Code § 62–12–26 provides in its entirety:

(a) Notwithstanding any other provision of this code to the contrary, any defendant convicted after the effective date of this section of a violation of section twelve [§ 61–8–12], article eight, chapter sixty-one of this code or a felony violation of the provisions of article eight-b [§§ 62[sic]–8B–1 et seq.], eight-c [§§ 62[sic]8C–1 et seq.] or eight-d [§§ 62[sic]–8D–1 et seq.] of said chapter shall, as part of the sentence imposed at final disposition, be required to serve, in addition to any other penalty or condition imposed by the court, a period of supervised release of up to fifty years: Provided, That the period of supervised release imposed by the court pursuant to this section for a defendant convicted after the effective date of this section as amended and reenacted during the first extraordinary session of the Legislature, 2006, of a violation of section three [§ 61–8[B]–3] or seven [§ 61–8[B]–7], article eight-b, chapter sixty-one of this code and sentenced pursuant to section nine-a [61–8[B]–9a] of said article, shall be no less than ten years: Provided, however, That a defendant designated after the effective date of this section as amended and reenacted during the first extraordinary session of the Legislature, 2006, as a sexually violent predator pursuant to the provisions of section two-a [§ 15–12–2a], article twelve, chapter fifteen of this code shall be subject, in addition to any other penalty or condition imposed by the court, to supervised release for life: Provided further, That, pursuant to the provisions of subsection (g) of this section, a court may modify, terminate or revoke any term of supervised release imposed pursuant to subsection (a) of this section.

(b) Any person required to be on supervised release for a minimum term of ten years or for life pursuant to the provisos of subsection (a) of this section also shall be further prohibited from:

(1) Establishing a residence or accepting employment within one thousand feet

of a school or child care facility or within one thousand feet of the residence of a victim or victims of any sexually violent offenses for which the person was convicted;

(2) Establishing a residence or any other living accommodation in a household in which a child under sixteen resides if the person has been convicted of a sexually violent offense against a child, unless the person is one of the following:

(i) The child's parent;

(ii) The child's grandparent; or

(iii) The child's stepparent and the person was the stepparent of the child prior to being convicted of a sexually violent offense, the person's parental rights to any children in the home have not been terminated, the child is not a victim of a sexually violent offense perpetrated by the person, and the court determines that the person is not likely to cause harm to the child or children with whom such person will reside: Provided, That nothing in this subsection shall preclude a court from imposing residency or employment restrictions as a condition of supervised release on defendants other than those subject to the provision of this subsection.

(c) The period of supervised release imposed by the provisions of this section shall begin upon the expiration of any period of probation, the expiration of any sentence of incarceration or the expiration of any period of parole supervision imposed or required of the person so convicted, whichever expires later.

(d) Any person sentenced to a period of supervised release pursuant to the provisions of this section shall be supervised by the probation office of the sentencing court or by the community corrections program established in said circuit unless jurisdiction is transferred elsewhere by order of the sentencing court.

(e) A defendant sentenced to a period of supervised release shall be subject to any or all of the conditions applicable to a person placed upon probation pursuant to the provisions of section nine [§ 62–12–9] of this article: Provided, That any defendant sentenced to a period of supervised release pursuant to this section shall be required to participate in appropriate offender treatment programs or counseling during the period of supervised release unless the court deems the offender treatment programs or counseling to no longer be appropriate or necessary and makes express findings in support thereof.

Within ninety days of the effective date of this section as amended and reenacted during the first extraordinary session of the Legislature, 2006, the Secretary of the Department of Health and Human Resources shall propose rules and emergency rules for legislative approval in accordance with the provisions of article three [§§ 29A–3–1 et seq.], chapter twenty-nine-a of this code establishing qualifications for sex offender treatment programs and counselors based on accepted treatment protocols among licensed mental health professionals.

(f) The sentencing court may, based upon defendant's ability to pay, impose a supervision fee to offset the cost of supervision. Said fee shall not exceed $50 per month. Said fee may be modified periodically based upon the defendant's ability to pay.

(g) *Modification of conditions or revocation.*—The court may:

(1) Terminate a term of supervised release and discharge the defendant released at any time after the expiration of two years of supervised release, pursuant to the provisions of the West Virginia Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interests of justice;

(2) Extend a period of supervised release if less than the maximum authorized period was previously imposed or modify, reduce or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, consistent with the provisions of the West Virginia Rules of Criminal Procedure relating to the modification of probation and the provisions applicable

to the initial setting of the terms and conditions of post-release supervision;

(3) Revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release without credit for time previously served on supervised release if the court, pursuant to the West Virginia Rules of Criminal Procedure applicable to revocation of probation, finds by clear and convincing evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this subdivision may not be required to serve more than the period of supervised release;

(4) Order the defendant to remain at his or her place of residence during nonworking hours and, if the court so directs, to have compliance monitored by telephone or electronic signaling devices, except that an order under this paragraph may be imposed only as an alternative to incarceration.

(h) *Written statement of conditions.*— The court shall direct that the probation officer provide the defendant with a written statement at the defendant's sentencing hearing that sets forth all the conditions to which the term of supervised release is subject and that it is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

(i) *Supervised release following revocation.*—When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of supervised release authorized under subsection (a) of this section, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by this section less any term of imprisonment that was imposed upon revocation of supervised release.

(j) *Delayed revocation.*—The power of the court to revoke a term of supervised release for violation of a condition of supervised release and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (i) of this section, a further term of supervised release extends beyond the expiration of the term of supervised release for any period necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.