# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 17-0195** (Morgan County 05-F-70)

**John W. Payne,**
**Defendant Below, Petitioner**

**FILED**

**March 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner John W. Payne, by counsel Ben J. Crawley-Woods, appeals the Circuit Court of Morgan County's January 30, 2017, order revoking his supervised release and sentencing him to twenty-four years of incarceration. The State of West Virginia, by counsel Shannon Frederick Kiser, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court's sentence is unconstitutionally disproportionate, that the circuit court disregarded his low level of intelligence as a mitigating factor, and that it erroneously interpreted the conditions of his supervised release.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2006, petitioner pled no contest to third-degree sexual assault and was sentenced to an indeterminate term of one to five years of incarceration. The circuit court also imposed a thirty-year-term of supervised release following the discharge of his prison sentence, which included various terms and conditions.

On January 31, 2011, a probation officer ("PO") filed a "Petition for Revocation of Supervised Release" alleging that petitioner violated the terms and conditions of his supervised release by operating a motor vehicle without a valid operator's license and without his PO's permission, having contact with minor children, providing false information to his PO, and possessing weapons. The circuit court held a hearing on this petition, and petitioner admitted to several of the allegations, including those relative to the motor vehicle operation, having contact with minors, and possessing weapons. Accordingly, the circuit court revoked petitioner's supervised release, sentenced him to five years of incarceration, and imposed the balance of his thirty-year supervised release term upon discharge of his prison sentence.

1

A PO filed a second "Petition for Revocation of Supervised Release" on July 16, 2015. The PO alleged that petitioner failed to attend multiple counseling sessions; failed to pay money owed to a licensed polygrapher and therapist; provided false information concerning a Facebook account, internet access, and cellular telephone service; failed to provide his PO with a list of computer equipment he used; and failed to make payments toward his court costs, drug testing costs, and supervision fees. The circuit court held a hearing on this second petition. In addition to other evidence taken, petitioner admitted to being deceptive about his internet, cell phone, and Facebook use. The circuit court, therefore, revoked petitioner's supervised release, sentenced him to one year in prison, and imposed the remainder of his thirty-year supervised release term.

On October 13, 2016, a PO filed a third "Petition for Revocation of Supervised Release." The PO alleged that petitioner failed to provide requested documentation concerning his prescription medication; established an e-mail account without approval; accessed the internet or sent e-mails without permission approximately fifty-nine times; received pornographic images via e-mail; solicited prostitution multiple times; provided false information to his PO; failed to notify his PO of a newly-acquired cellular telephone; visited sexually-explicit websites; and failed to make payments toward court costs, drug testing costs, and supervision fees. The petition also alleged that petitioner's internet access and e-mailing were directed toward coordinating sexual encounters, and in attempting to contact these individuals, petitioner failed to disclose his conviction or status as a sex offender. Furthermore, petitioner's sexual offender treatment therapist reported that petitioner had not "dropped the victim stance" and "believe[d] himself to be unjustly caught in the system[.]" As a result, petitioner's sexual offender treatment therapist stated that petitioner had not "substantially progressed" over the past several years and that petitioner was in need of a "higher level of care" than the therapist could provide.

Following the filing of this third petition for revocation, petitioner moved for a mental examination to determine his ability to comprehend the nature of the proceedings against him. The circuit court granted this motion. The psychological evaluation revealed that, although petitioner had an IQ of 73, he was able to consult with his lawyer and understand the proceedings against him. The evaluator also noted a high degree of malingering.

The circuit court held a hearing on the third petition for revocation. Petitioner admitted to many of the violations alleged in the third petition, including using a new cell phone without providing notice, e-mailing without permission, and using the internet without permission. The circuit court reviewed petitioner's psychological evaluation and found "no intellectual deficiency in the [petitioner] sufficient to explain the violations" and that petitioner had been deceptive during his evaluation. The circuit court further noted petitioner's prior supervised release revocations for similar behaviors and the fact that petitioner's "continued denial of being a sex offender puts society at risk that he might repeat the behavior." Accordingly, the circuit court revoked petitioner's supervised release and sentenced him to twenty-four years of incarceration, which represented the balance of his supervised release term. These rulings were memorialized in an order entered on January 30, 2017. It is from this order that petitioner appeals.

"'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syl. Pt. 1,

in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syl. Pt. 1, *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011).

Petitioner first argues on appeal that his sentence is unconstitutionally disproportionate.[1] Petitioner contends that his twenty-four-year sentence shocks the conscience because his underlying offense, third-degree sexual assault, is punishable by only one to five years of imprisonment. Petitioner argues that none of his supervised release violations amounts to a crime, except for soliciting prostitution; however, even if convicted of such, he would only have been sentenced to sixty days to six months in the county jail and fined. Petitioner further acknowledges the terms of supervised release prohibited him from possessing obscene material and that the conversations directed toward sexual companionship "approach[ed] the level of obscene matter[,]" but he highlights that he made no attempt to contact any minors since his first revocation petition. Petitioner also argues that although the statutory penalties for crimes analogous to his technical supervised release violations amount to a maximum of five years of incarceration, the circuit court sentenced him to nearly five times that amount. In short, petitioner argues that his sentence is both subjectively and objectively disproportionate because the statutory penalty for similar conduct would amount to a fraction of petitioner's sentence for non-criminal supervised release violations.

"A criminal sentence may be so long as to violate the proportionality principle implicit in the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution." *Vance*, 164 W.Va. at 217, 262 S.E.2d at 425, Syl. Pt. 7. There are two tests for determining whether a sentence is so disproportionate to the crime that it violates Article III, Section 5 of the West Virginia Constitution. "The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further." *State v. Adams*, 211 W.Va. 231, 233, 565 S.E.2d 353, 355 (2002) (citation omitted). To determine whether a sentence shocks the conscience, this Court considers all of the circumstances surrounding the offense. *Id.* If a sentence is found not to shock the conscience, this Court proceeds to the objective test. Under the objective test, to determine whether a sentence violates the proportionality principle, "consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction." *Id.* at 232, 565 S.E.2d at 354, Syl. Pt. 2, in part.

West Virginia Code § 62-12-26(a), governing supervised release for certain sex offenders, provides that

> [n]otwithstanding any other provision of this code to the contrary, any defendant convicted after the effective date of this section of a violation of section twelve,

---

[1] "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.'" Syl. Pt. 8, *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980).

article eight, chapter sixty-one of this code or a felony violation of the provisions of article eight-b, eight-c or eight-d of said chapter shall, as part of the sentence imposed at final disposition, be required to serve, in addition to any other penalty or condition imposed by the court, a period of supervised release of up to fifty years[.]

We have previously explained that, "[f]undamentally, the statute provides that a court impose a period of extended supervision as part of the criminal sentence for certain specified offenses, and sets forth the manner in which the supervision is to be administered and enforced." *James*, 227 W.Va. at 414, 710 S.E.2d at 105.

Moreover, "a court may modify, terminate or revoke any term of supervised release imposed[.]" W.Va. Code § 62-12-26(a). Specifically, a court may

[r]evoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release without credit for time previously served on supervised release if the court, pursuant to the West Virginia Rules of Criminal Procedure applicable to revocation of probation, finds by clear and convincing evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this subdivision may not be required to serve more than the period of supervised release[.]

*Id.* at § 62-12-26(g)(3).

We find that petitioner's post-revocation sentence does not violate our constitutional proportionality principle. In *State v. Hargus*, 232 W.Va. 735, 753 S.E.2d 893 (2013), we held that a five-year post-revocation sentence did not violate our constitutional proportionality principle under the subjective test. In that case, Mr. Hargus served an initial two-year sentence for possessing material depicting minors engaged in sexually explicit conduct. *Id.* at 743, 753 S.E.2d at 901. Mr. Hargus was then placed on supervised release, which he violated by failing to register as a sex offender as required. *Id.* As a result, he was sentenced to a post-revocation period of incarceration of five years. *Id.* In challenging this sentence on proportionality grounds, Mr. Hargus argued, among other things, that his supervised release was revoked "based solely on a technical violation of a condition of supervised release." *Id.* at 744, 753 S.E.2d at 902. We upheld the five-year sentence despite the fact that Mr. Hargus's crime did not involve sexual contact. *Id.* We also found unavailing Mr. Hargus's argument that his violation of supervised release was only "technical" because his violation "indicate[d] a pattern of dishonesty." *Id.*

Here, petitioner's underlying crime did involve sexual contact. Not only that, but petitioner fails to appreciate the wrongfulness of his conduct in his persistent denial of being a sex offender, which the circuit court found "puts society at risk that he might repeat the behavior." Moreover, we upheld the five-year sentence in *Hargus* after Mr. Hargus's first supervised release violation. *Id.* at 743, 753 S.E.2d at 901. Petitioner, however, has violated the terms and conditions of his supervised release twice before, and the subject revocation alleged a significant number of violations, including violations establishing a pattern of dishonesty. Due to the seriousness of petitioner's underlying crime and the fact that a five-year post-revocation

sentence following a first violation does not violate the proportionality principle, we find that petitioner's post-revocation sentence does not shock the conscience of the court and society.

We note that petitioner has failed to meaningfully address the objective proportionality test. Although petitioner identifies the punishments for crimes analogous to his supervised release violations, he has failed to offer analysis of the nature of his underlying offense of third-degree sexual assault, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, or a comparison of the punishment for third-degree sexual assault with other offenses within the same jurisdiction.[2] Thus, petitioner has failed to establish that his sentence is disproportionate under the objective test. *See Hargus*, 232 W.Va. at 744, 753 S.E.2d at 902 ("Second, this Court finds that Mr. Hargus's post-revocation sanctions do not violate the objective test for constitutional disproportionality. In sum, Mr. Hargus has failed to specifically address how the nature of the offense, the legislative purpose behind the punishment, and a comparison with other offenses within the same jurisdiction compels the finding that his post-revocation sanctions violate our constitution's proportionality principle."); *see also State, Dep't of Health & Human Res. v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995) ("[a] skeletal 'argument', really nothing more than an assertion, does not preserve a claim[.]")

Petitioner's second assignment of error is that the circuit court erroneously disregarded petitioner's low intelligence level as a mitigating factor. Petitioner argues that, "[e]ven if he were a smart man, it would be easy to make a mistake in efforts to comply with the onerous and sometimes inconsistent requirements of sex offender registration statutes and the plethora of non-statutory conditions of supervised release."

Petitioner's psychological evaluation revealed no impediment to his ability to understand his supervised release revocation proceedings. It did reveal, however, that petitioner exaggerated responses and was deceptive. Moreover, the circuit court did not disregard petitioner's low intelligence. Rather, the court considered it but found that any intellectual deficiency failed to explain the violations. Accordingly, we find no merit to this assignment of error.

Petitioner's final assignment of error is that the circuit court erroneously interpreted petitioner's obligation to "notify any third-parties of risks that may be occasioned by the [d]efendant's criminal record or personal characteristics as directed by the Probation Officer" to require him to disclose his status as a sex offender during any initial communication with a third-party. Petitioner contends that this erroneous interpretation "contributed to the abuse of discretion in imposing" petitioner's sentence.

---

[2]"[A] post-revocation sanction simply is a continuation of the legal consequences of a defendant's original crime. In other words, it is part of a single sentencing scheme arising from the defendant's original conviction." *Hargus*, 232 W.Va. 743, 753 S.E.2d at 901. Thus, petitioner's argument concerning the punishments for crimes analogous to the violations he committed does not fully address this factor. For this reason, we also decline petitioner's request to hold that a circuit court "must consider the associated, potential criminal penalties for a person's alleged violations of supervised release in determining a constitutionally sound imposition of supervised release incarceration upon such violations."

We find no merit to this assignment of error. Petitioner admitted to multiple violations, including obtaining and using a new cell phone without providing notice to his probation officer, e-mailing without permission on multiple occasions, and using the internet without permission on multiple occasions.[3] Simply, sufficient justification for revoking his supervised release and imposing the twenty-four-year sentence exists in the record. Accordingly, we find that the circuit court did not abuse its discretion in sentencing petitioner.

For the foregoing reasons, the circuit court's January 30, 2017, order sentencing petitioner to twenty-four years of incarceration is hereby affirmed.

Affirmed.

**ISSUED:** March 23, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

---

[3]Although petitioner does not raise a First Amendment challenge to his supervised release condition concerning his internet access, we nonetheless observe that this condition is not overly broad because it is not a complete bar to access. Rather, petitioner needed only to obtain prior written permission from his PO to use sites that could "provide[] him access to external lines of communication." Thus, this condition does not run afoul of *Packingham v. North Carolina*, 137 S.Ct. 1730, 198 L.E.2d 273 (2017) (striking down a law prohibiting registered sex offenders from "access[ing] social networking Web site[s] where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages" as an overbroad restriction on First Amendment rights); *see also Mutter v. Ross*, No. 16-1156, -- W.Va. --, -- S.E.2d -- (W.Va. Mar. 12, 2018).

6