# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

_____

No. 12-0513

_____

FILED

November 14, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent**

**v.**

**GABRIEL HARGUS,**
**Defendant Below, Petitioner**

_____

**Appeal from the Circuit Court of Kanawha County**
**The Honorable Louis H. Bloom, Judge**
**Criminal Action No. 11-F-40**

**AFFIRMED**
_____

**AND**

_____

**No. 12-0833**

_____

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent**

**v.**

**ROBERT LEE LESTER,**
**Defendant Below, Petitioner**

_____

**Appeal from the Circuit Court of Preston County**
**The Honorable Lawrance S. Miller, Jr., Judge**
**Criminal Action No. 07-F-76**

**AFFIRMED**
_____

**Submitted: October 15, 2013**
**Filed:  November 14, 2013**

**Lori M. Peters, Esq.**
**Assistant Public Defender**
**Kanawha County Public**
**Defender's Office**
**Charleston, West Virginia**
**Attorney for Petitioner Hargus**

**Duane C. Roselieb, Jr, Esq.**
**WV Public Defender Services**
**Charleston, West Virginia**
**and**
**Randy R. Goodrich, Esq.**
**Kingwood, West Virginia**
**Attorneys for Petitioner Lester**

**Patrick Morrisey, Esq.**
**Attorney General**
**Laura Young, Esq.**
**Assistant Attorney General**
**Charleston, West Virginia**
**Attorneys for the State**

**William C. Means, Esq.**
**Senior Assistant Prosecuting Attorney**
**of Preston County**
**Kingwood, West Virginia**
**Attorney for the State**

**CHIEF JUSTICE BENJAMIN delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment." Syl. pt. 3, *Willis v. O'Brien*, 151 W. Va. 628, 153 S.E.2d 178 (1967).

2. "West Virginia Code § 62-12-26 (2009) is not facially unconstitutional on cruel and unusual punishment grounds in contravention of the Eighth Amendment to the United States Constitution or Article III, § 5 of the West Virginia Constitution." Syl. pt. 6, *State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011).

3. "West Virginia Code § 62-12-26 (2009) does not facially violate due process principles of the Fourteenth Amendment to the Constitution of the United States or Article III, Section 10 of the Constitution of West Virginia. The terms of the statute neither infringe upon a criminal defendant's right to jury determination of relevant factual matters, nor are the provisions of the statute regarding conditions of unsupervised release unconstitutionally vague." Syl. pt. 9, *State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011).

4. "The imposition of the legislatively mandated additional punishment of a period of supervised release as an inherent part of the sentencing scheme for certain

i

offenses enumerated in West Virginia Code § 62-12-26 (2009) does not on its face violate the double jeopardy provisions contained in either the United States Constitution or the West Virginia Constitution." Syl. pt. 11, *State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011).

5.   West Virginia Code § 62-12-26(g)(3) (2011) does not facially violate procedural due process principles of the Fourteenth Amendment to the Constitution of the United States or Article III, § 10 of the Constitution of West Virginia.

6.   West Virginia Code § 62-12-26 (2011), which provides for a period of extended supervision for certain sex offenders, does not violate the equal protection guarantees in the Fourteenth Amendment to the United States Constitution or Article III, §10 of the Constitution of West Virginia.

7.   West Code § 62-12-26(g)(3) (2011), which provides for additional sanctions, including incarceration, upon revocation of a criminal defendant's period of supervised release, does not violate the prohibition against double jeopardy found in the Fifth Amendment of the United States Constitution and Article III, § 5 of the Constitution of West Virginia.

8.   "A criminal sentence may be so long as to violate the proportionality principle implicit in the cruel and unusual punishment clause of the Eighth Amendment

to the United States Constitution." Syl. pt. 7, *State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980).

9. "Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense." Syl. pt. 5, *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983).

10. "In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction." Syl. pt. 5, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

11. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

12. "An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment." Syl. pt. 5, *Morgan v. Price*, 151 W. Va. 158, 150 S.E.2d 897 (1966).

**Benjamin, Chief Justice:**

The two appeals in this case have been consolidated for purposes of argument, consideration, and decision. In both appeals, the petitioners raise constitutional challenges to the revocation of supervised release and the additional sanctions imposed pursuant to W. Va. Code § 62-12-26(g)(3) (2011), which is the extended supervision statute for certain sex offenders. After careful consideration of the parties' arguments and the relevant portions of the appendices, we affirm.[1]

## I. FACTS

This Court relates the particular facts of each case separately below.

### A. *Gabriel Hargus*

In February 2011, Petitioner Gabriel Hargus pled guilty to one count of possession of materials depicting a minor engaged in sexually explicit conduct. The Circuit Court of Kanawha County sentenced him to two years of incarceration, a period of thirty years extended supervision, and lifetime registration as a sex offender under W. Va. Code § 62-12-26.

---

[1] In Mr. Hargus's case, the State is represented by the Attorney General. While this case was pending before the Court, Patrick Morrisey was sworn into office as Attorney General for the State of West Virginia, replacing for Attorney General Darrell V. McGraw, Jr.

1

Subsequently, the State alleged that Mr. Hargus failed to register as a sex offender. By order dated March 15, 2012, the Circuit Court of Kanawha County found, following a full hearing, that Mr. Hargus violated a condition of his supervised release by (1) failing to provide his alias name of "Ethan Stone" to the West Virginia State Police, (2) failing to provide his social security number, and (3) intentionally providing a false date of birth. As a result, the circuit court modified Mr. Hargus's supervised release, ordering Mr. Hargus to serve five years, of his thirty years of supervised release incarcerated in the penitentiary, and once released from the penitentiary, to be on supervised release for another 25 years. Additionally, the circuit court ruled that Mr. Hargus shall not reside in a residence with a computer.

Mr. Hargus now raises several challenges to the circuit court's March 15, 2012, order.

### B. Robert Lee Lester

Petitioner Robert Lee Lester was sentenced to one to five years for the offense of third degree sexual assault and a consecutive 90–day sentence for the offense of third degree sexual abuse. Also, he was sentenced to a period of ten years of extended supervision under W. Va. Code § 62-12-26. Mr. Lester ultimately discharged the one to five year and 90–day sentences.

Thereafter, Mr. Lester admitted that he had contact, including sexual intercourse, with the victim in the underlying case in knowing violation of a sex offender condition.[2] As a result, the Circuit Court of Preston County, by order of June 5, 2012, ordered the modification of Mr. Lester's supervision requiring Mr. Lester to serve two years of incarceration of his ten years of supervised release. The circuit court further ruled that Mr. Lester shall, upon release from his incarceration, serve the balance of his period of supervised release.

Like Mr. Hargus, Mr. Lester now challenges the modification of his supervised release.

## II.

### STANDARD OF REVIEW

In these appeals, the primary issue is the constitutionality of the portion of W. Va. Code § 62-12-26 that permits the revocation of supervised release and additional incarceration when a sex offender violates a condition of supervised release. This Court previously has held that "[t]he constitutionality of a statute is a question of law which this Court reviews *de novo*." Syl. pt. 1, *State v. Rutherford*, 223 W. Va. 1, 672 S.E.2d 137 (2008). Additionally, "[w]hen the constitutionality of a statute is questioned every

---

[2] Mr. Lester's original convictions arose from his conduct with his then 13-year-old girlfriend, Melanie N. Mr. Lester was 19 years of age at the time. When Mr. Lester had sexual intercourse with Melanie N. again resulting in the modification of his supervised release, Melanie N. was 18 years old.

reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment." Syl. pt. 3, *Willis v. O'Brien*, 151 W. Va. 628, 153 S.E.2d 178 (1967).

## III.

## ANALYSIS

The petitioners in this case were sentenced pursuant to W. Va. Code § 62-12-26, which provides for extended supervision of certain sex offenders. This Court previously has explained that "[f]undamentally, the statute provides that a court impose a period of extended supervision as part of the criminal sentence for certain specified offenses, and sets forth the manner in which the supervision is to be administered and enforced." *State v. James*, 227 W. Va. 407, 414, 710 S.E.2d 98, 105 (2011). Subsection (a) of the statute explains its general operation as follows:

> Notwithstanding any other provision of this code to the contrary, any defendant convicted after the effective date of this section of a violation of section twelve [§ 61-8-12], article eight, chapter sixty-one of this code or a felony violation of the provisions of article eight-b [§§ 61-8B-1 et seq.], eight-c [§§ 61-8C-1 et seq.] or eight-d [§§ 61-8D-1 et seq.] of said chapter shall, as part of the sentence imposed at final disposition, be required to serve, in addition to any other penalty or condition imposed by the court, a period of supervised release of up to fifty years: Provided, That the period of supervised release imposed by the court pursuant to this section for a defendant convicted after the effective date of this section as amended and reenacted during the first extraordinary session of the Legislature, 2006, of a violation of section three [§ 61-8B-3] or seven [§ 61-8B-7], article

4

eight-b, chapter sixty-one of this code and sentenced pursuant to section nine-a [§ 61-8B-9a] of said article, shall be no less than ten years: Provided, however, That a defendant designated after the effective date of this section as amended and reenacted during the first extraordinary session of the Legislature, 2006, as a sexually violent predator pursuant to the provisions of section two-a [§ 15-12-2a], article twelve, chapter fifteen of this code shall be subject, in addition to any other penalty or condition imposed by the court, to supervised release for life: Provided further, That pursuant to the provisions of subsection (g) of this session, a court may modify, terminate or revoke any term of supervised release imposed pursuant to subsection (a) of this section.

W. Va. Code § 62-12-26(a).

This Court previously has decided that W. Va. Code § 62-12-26 is facially constitutional. In *James*, this Court held as follows:

6. West Virginia Code § 62-12-26 (2009) is not facially unconstitutional on cruel and unusual punishment grounds in contravention of the Eighth Amendment to the United States Constitution or Article III, § 5 of the West Virginia Constitution.

9. West Virginia Code § 62-12-26 (2009) does not facially violate due process principles of the Fourteenth Amendment to the Constitution of the United States or Article III, Section 10 of the Constitution of West Virginia. The terms of the statute neither infringe upon a criminal defendant's right to jury determination of relevant factual matters, nor are the provisions of the statute regarding conditions of unsupervised release unconstitutionally vague.

11. The imposition of the legislatively mandated additional punishment of a period of supervised release as an inherent part of the sentencing scheme for certain offenses enumerated in West Virginia Code § 62-12-26 (2009) does not on its face violate the double jeopardy provisions

5

contained in either the United States Constitution or the West Virginia Constitution.[3]

(footnote added). Syl. pts. 6, 9, and 11, *James*, 227 W. Va. 407, 710 S.E.2d 98. However, *James* did not involve the modification, termination, or revocation of the supervised release portions of the defendants' sentences. For that reason, in this case, this Court will address the constitutionality of revocation of supervised release and post-revocation sanctions.

The petitioners herein raise constitutional challenges to W. Va. Code § 62-12-26(g)(3), which concern specifically the revocation of supervised release and post-revocation sanctions as follows:

> (g) **Modification of conditions or revocation.** – The court may:
>
> . . . .
>
> (3) Revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release without credit for time previously served on supervised release if the court, pursuant to the West Virginia Rules of Criminal Procedure applicable to revocation of probation, finds by clear and convincing evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this subdivision may not be required to serve more than the period of supervised release[.]

---

[3] W. Va. Code § 62-12-26 was amended in 2011. However, the changes made were few and minor and none affect this Court's decision in *James* that the statute is facially constitutional.

### A. Procedural Due Process

The petitioners first assert that the above provision violates the right to procedural due process under the state and federal constitutions because a defendant's supervised release can be revoked and the defendant can be sentenced to additional incarceration after the court finds by clear and convincing evidence that the defendant violated a condition of his supervised release. Mr. Hargus posits that revocation should require that a jury find the defendant guilty of the violation beyond a reasonable doubt which is required for a finding of guilt in a criminal trial.[4]

In our consideration of this issue, we find the case of *United States v. Johnson*, 529 U.S. 694 (2000), to be persuasive. In *Johnson*, the United States Supreme Court considered an issue that arose under the federal supervised release statute found at 18 U.S.C. § 3583. Like the statute at issue, the Court in *Johnson* explained that the federal statute gives district courts the power to revoke a defendant's supervised release and impose a prison term, and also to impose another term of supervised release following imprisonment. Significantly, the *Johnson* Court attributed post-revocation penalties to the defendant's original conviction and not to a violation of the conditions of supervised release. In explaining this decision, the Court recognized that construing the

---

[4] *See* U.S. Const. amend. V (stating that no person shall "be . . . deprived of life, liberty or property, without due process of law") and amend. VI ("The accused shall enjoy the right to a . . . public trial, by an impartial jury. . . ."); W. Va. Const. art. III, § 10 ("No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers.").

revocation of a defendant's supervised release and re-imprisonment as punishment for the violation of the conditions of supervised release would raise serious constitutional questions. The Court additionally indicated:

> Although such violations [of supervised release] often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt. See 18 U.S.C. § 3583(e)(3) (1988 ed., Supp. V). Where the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense. Treating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties.

*Johnson*, 529 U.S. at 700 (citations omitted).[5]

---

[5] In *Johnson*, the defendant's supervised release was revoked. The court then imposed a prison term of 18 months, and ordered that the defendant be placed on supervised release for 12 months following the period of re-imprisonment. The defendant challenged on *ex post facto* grounds the portion of the order requiring him to be placed on supervised release for 12 months after his re-incarceration.

The argument of the defendant in *Johnson* was based on the fact that the federal supervised release statute was not amended to expressly provide for additional supervised release after post-revocation incarceration until after the defendant originally was sentenced for the underlying crime. The Supreme Court agreed with the defendant. The Court reasoned that post-revocation sanctions are part of the penalty for the initial offense, and the amended portion of the statute expressly authorizing imposition of an additional term of supervised release does not apply retroactively. Nevertheless, the Court affirmed the defendant's sentence after finding that even under the statute in effect at the time of the defendant's initial offense, a district court revoking a term of supervised release and imposing a period of re-incarceration was authorized to require a further term of supervised release following the re-incarceration.

It is Mr. Hargus's position that *Johnson* does not apply to the instant facts because the federal statute construed in *Johnson* and W. Va. Code § 62-12-26 are significantly different. In support of his position, Mr. Hargus asserts that the federal statute applies to any federal crime and not just sex crimes. Also, says Mr. Hargus, the federal statute places some limits on the amount of time that a defendant may be on supervised release and the amount of time a defendant is incarcerated for a violation. In addition, Mr. Hargus notes that the federal statute essentially replaces the federal parole system. Finally, Mr. Hargus indicates that, unlike the statute at issue, the federal statute says that supervised release may be included as part of the sentence whereas W. Va. Code § 62-12-26 does not so specify.

We reject Mr. Hargus's argument. The fact that there are several differences between the two statutes does not mitigate the applicability of the Court's reasoning in *Johnson* to the statutory provision at issue in this case. Therefore, we apply the *Johnson* Court's construction of the federal statute, with regard to the revocation of extended supervision and post-revocation incarceration, to the provisions of W. Va. Code § 62-12-26(g). We find that it is proper to do so because this construction of our statute is reasonable, and this Court must resort to every reasonable construction of a statute in order to sustain its constitutionality. Consequently, we construe a revocation proceeding under W. Va. Code § 62-12-26(g)(3) to be a continuation of the prosecution of the original offense and not a new prosecution of additional offenses. Because a revocation hearing under W. Va. Code § 62-12-26(g) is not a separate criminal prosecution, it does

9

not require a finding of guilt by a jury beyond a reasonable doubt. As a result, the fact that a defendant's supervised release may be revoked and additional incarceration imposed based on the circuit court's finding by clear and convincing evidence that a defendant violated the terms of his supervised release does not violate due process principles.

Accordingly, we now hold that West Virginia Code § 62-12-26(g)(3) (2011) does not facially violate procedural due process principles of the Fourteenth Amendment to the Constitution of the United States or Article III, § 10 of the Constitution of West Virginia.[6]

## B. Equal Protection

Second, Mr. Hargus contends that W. Va. Code § 62-12-26(g)(3) violates the constitutional guarantee of equal protection under the law.[7] Mr. Hargus asserts that

---

[6] In his first assignment of error, Mr. Hargus also asserts that the extended supervision act violates substantive due process principles. However, because Mr. Hargus fails to present a separate and specific argument accompanied by citation to legal authority to support this assertion, we decline to address this issue.

[7] *See* U.S. Const., amend. 14 ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."); W. Va. Const. art. III, § 10 ("No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."); *see also* Syl. pt. 4, in part, *Gibson v. W. Va. Dept. of Highways*, 185 W. Va. 214, 406 S.E.2d 440 (1991) (indicating that "Article III, Section 10 of the West Virginia Constitution . . . is our equal protection clause").

10

the fact that W. Va. Code § 62-12-26 applies only to sex offenders and no other criminal defendants violates equal protection principles.

Mr. Hargus's equal protection argument has no merit. This Court has explained that "equal protection means the State cannot treat similarly situated people differently unless circumstances justify the disparate treatment." *Kyriazis v. University of West Virginia*, 192 W. Va. 60, 67, 450 S.E.2d 649, 656 (1994) (citations omitted). In the instant case, Mr. Hargus is not similarly situated to criminal defendants who were not convicted of the sex offenses specified in W. Va. Code § 62-12-26(a). Because Mr. Hargus was convicted of a sex offense for which W. Va. Code § 62-12-26 applies, he is subject to the sentencing provisions of that statute. It is the Legislature's prerogative to criminalize certain conduct and to determine the punishment for that conduct. Having been found guilty of violating a specific statute, Mr. Hargus is subject to the punishment that is appropriate for a violation of that statute as determined by the Legislature. He cannot complain that those who violate different criminal statutes are punished differently than he is. *See*, *e.g.*, *Drew v. State*, 684 S.E.2d 608 (Ga. 2009) (opining that criminal defendants are similarly situated for purposes of equal protection only if they are charged with the same crime or crimes). Therefore, this Court holds that West Virginia Code § 62-12-26 (2011), which provides for a period of extended supervision for certain sex offenders, does not violate the equal protection guarantees found in the Fourteenth Amendment to the United States Constitution or Article III, § 10 of the Constitution of West Virginia.

11

### *C. Double Jeopardy*

Both Mr. Hargus and Mr. Lester posit that post-revocation sanctions provided for in W. Va. Code § 62-12-26(g)(3) violate the constitutional guarantee against double jeopardy.[8] The petitioners argue that a person sentenced to incarceration for a violation of supervised release is punished twice, once for the original offense and then a second time when his supervised release is revoked and he is sentenced to post-revocation incarceration.

We find that the extended supervision statute does not violate double jeopardy principles. As we held above, a post-revocation sanction simply is a continuation of the legal consequences of a defendant's original crime. In other words, it is part of a single sentencing scheme arising from the defendant's original conviction. It is not an additional penalty resulting from the defendant's initial conviction.[9] For this reason, a post-revocation sanction does not violate the constitutional guarantee against double jeopardy. Accordingly, this Court now holds that West Virginia Code § 62-12-26(g)(3) (2011), which provides for additional sanctions, including incarceration, upon

---

[8] *See* U.S. Const. amend. V (stating "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb"); W. Va. Const. art. III, § 5 ("No person shall . . . be twice put in jeopardy of life or liberty for the same offence.").

[9] In support of their argument, the petitioners note that this Court referred to supervised release in syllabus point 11 of *James*, *supra*, as "additional punishment." Inasmuch as we held in *James* that a sentence of supervised release does not violate double jeopardy principles, it is clear that our use of the term "additional punishment" does not indicate a second and separate punishment for the same offense.

revocation of a criminal defendant's period of supervised release, does not violate the prohibition against double jeopardy found in the Fifth Amendment of the United States Constitution and Article III, § 5 of the Constitution of West Virginia.

### D. Disproportionate Sentence

The next assignment of error raised by both Mr. Hargus and Mr. Lester is that their post-revocation sentences constitute cruel and unusual punishment in that the sentences are disproportionate to the crimes they committed. This Court will consider individually the petitioners' sentences.

### 1. Mr. Hargus's Post-Revocation Sentence

Mr. Hargus initially served two years of incarceration for possessing material depicting minors engaged in sexually explicit conduct. Subsequently, the circuit court found that Mr. Hargus violated a condition of his supervised release by failing to register as a sex offender as required. Specifically, the circuit court found that Mr. Hargus failed to provide to the State Police his alias name of "Ethan Stone" and his social security number, and that he intentionally provided a false date of birth. As a result, Mr. Hargus was sentenced to a post-revocation period of incarceration of five years and thereafter ordered to complete the balance of his term of supervised release which is 25 years. Mr. Hargus claims that his additional incarceration shocks the conscience and is objectively disproportionate to his crimes.

This Court has indicated that "[a] criminal sentence may be so long as to violate the proportionality principle implicit in the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution." Syl. pt. 7, *State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980). There are two tests to determine whether a sentence is so disproportionate to a crime that it violates the West Virginia Constitution. The subjective test is found in syllabus point 5 of *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983), which provides:

> Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

When it cannot be found that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test which states:

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

Syl. pt. 5, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981).

In support of his claim that his post-revocation incarceration is constitutionally disproportionate to his crime, Mr. Hargus notes that his only criminal conviction is the one that qualified him to be sentenced under the extended supervision

14

statute. In light of this fact, Mr. Hargus asserts that his post-revocation incarceration of five years shocks the conscience. With regard to the objective test, Mr. Hargus indicates that he was convicted of possessing child pornography which is not an offense involving sexual contact. Also, he notes that his supervised release was revoked based solely on a technical violation of a condition of supervised release. In addition, Mr. Hargus contends that other states take "less drastic measures" to manage sex offenders in which the periods of supervision and the punishments for violations are shorter. He cites, for example, Iowa, where, he says, a person can serve no more than two years of incarceration upon his first violation of extended supervision and no more than five years for a subsequent violation. He also refers to Wisconsin where, he says, prior to a sentence of lifetime supervision, the prosecutor must provide notice that the state is seeking lifetime supervision and there must be a judicial finding that lifetime supervision is appropriate.

This Court finds that Mr. Hargus's post-revocation incarceration of five years and requirement that he serve the balance of his supervised release does not violate our constitutional proportionality principle. First, the crime which qualified Mr. Hargus for sentencing under the extended supervision statute, possession of child pornography, is a serious offense. Child pornography victimizes children—the most vulnerable members of society. In addition, the heinous nature of the acts involved in producing child pornography is likely to cause immeasurable emotional and psychological violence to the children involved. While Mr. Hargus's crime did not involve sexual contact, his

15

consumption of child pornography made him an active participant in its production and dissemination. Further, while Mr. Hargus characterizes his violation of a condition of supervised release as "technical," the violation indicates a pattern of dishonesty. For these reasons, this Court finds that the post-revocation sanctions levied against Mr. Hargus do not shock the conscience or offend fundamental notions of human dignity.

Second, this Court finds that Mr. Hargus's post-revocation sanctions do not violate the objective test for constitutional disproportionality. In sum, Mr. Hargus has failed to specifically address how the nature of the offense, the legislative purpose behind the punishment, and a comparison with other offenses within the same jurisdiction compels the finding that his post-revocation sanctions violate our constitution's proportionality principle.

### 2. Mr. Lester's Post-revocation Sentence

Mr. Lester originally was convicted of the felony offense of third degree sexual assault and the misdemeanor offense of third degree sexual abuse. He was sentenced to one to five years for the offense of third degree sexual assault and a consecutive 90–day sentence for the offense of third degree sexual abuse. In addition, he was sentenced to a ten-year period of supervised release under the extended supervision statute. After Mr. Lester admitted that he had contact with the victim of his underlying crimes, including sexual intercourse, in knowing violation of a condition of his supervised release, Mr. Lester's supervised release was revoked and he was sentenced to

16

two years of incarceration after which he is to be on supervised release for the balance of the ten-year period. Mr. Lester now asserts that his post-revocation sanction is disproportionate to the facts of his crimes. We find no merit to Mr. Lester's assertion.

Mr. Lester has failed to convince this Court that his additional two years of incarceration followed by serving the balance of his period of supervised release should shock the conscience of this Court or that these sanctions offend fundamental notions of human dignity. In addition, Mr. Lester has not addressed why consideration of the nature of his offenses, the legislative purpose behind his punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction compels the finding that his post-revocation sentence violates constitutional proportionality principles. Therefore, we conclude that his post-revocation sanctions do not violate the constitutional proportionality principle.[10]

### E. Mr. Hargus's Notice of Violations of Conditions of Supervised Release

Mr. Hargus asserts that due process requires that a defendant receive notice of the charges against him so that he may prepare a proper defense. According to Mr. Hargus, he received proper notice of his alleged failures to provide an accurate birth date and an accurate accounting of his alias; however, Mr. Hargus contends that nowhere in the original criminal complaint of failure to register or in the notice of violation is there

---

[10] Mr. Lester also asserts that the extended supervision statute is overly vague. However, Mr. Lester does not include a supporting argument or citation to authority. Therefore, we decline to consider this issue.

any reference to an alleged failure to provide an accurate social security number. Nevertheless, at the close of the violation hearing, the circuit court found that Mr. Hargus violated the condition of his supervised release, in part, by failing to provide an accurate social security number. While Mr. Hargus admits that he did not object to this failure of notice below, he now avers that it constitutes plain error. Mr. Hargus concludes that because he did not receive constitutionally adequate notice of this allegation, the circuit court's finding of a violation of the condition of his supervised release based on his failure to provide an accurate social security number must be reversed.

Under our law, "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). Presuming that there was error in failing to give Mr. Hargus notice of the allegation that he did not provide an accurate social security number to the State Police in registering as a sex offender, we find that the error did not affect Mr. Hargus's substantial rights. "Normally, to affect substantial rights means that the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court." *Miller*, 194 W. Va. at 18, 459 S.E.2d at 129. The failure of notice complained of did not affect the outcome of the proceedings regarding the revocation of Mr. Hargus's supervised release.

18

In its order revoking Mr. Hargus's supervised release and sentencing him to additional incarceration, the circuit court found that Mr. Hargus failed to register in three ways, two of which Mr. Hargus does not challenge on appeal. Absent the finding that Mr. Hargus failed to provide his social security number, two findings remain to support the circuit court's ruling that Mr. Hargus violated a condition of supervised release by failing to register. As a result, if the circuit court's finding that Mr. Hargus failed to provide his social security number to the State Police was error, it did not affect the circuit court's determination that Mr. Hargus failed to register.

### F. Constitutionality of Restriction on Mr. Hargus's Computer Usage

Finally, in the order modifying Mr. Hargus's sentence, the circuit court ordered that Mr. Hargus shall not reside in a residence with a computer. Mr. Hargus now asserts that this condition is unconstitutional in that it directly impinges on his first amendment rights. According to Mr. Hargus, a person's internet usage can be monitored in other ways that would not require a full ban on internet use. Mr. Hargus explains that the internet is a vital part of modern living and without it a person loses many opportunities to apply for jobs and stay in contact with one's family and friends. In support of his argument, Mr. Hargus cites *United States v. Heckman*, 592 F.3d 400 (2010) and *United States v. Burroughs*, 613 F.3d 233 (D.C.Cir. 2010). Mr. Hargus concludes that the restriction regarding not residing in a residence with a computer is "excessive" and must be struck down.

19

We find that *Heckman* is instructive. In that case, the Mr. Heckman "was prohibited from access to any Internet service provider, bulletin board system, or any other public or private computer network for the remainder of his life—without exception." *Heckman*, 592 F.3d at 405 (internal quotation omitted). The imposition of this condition on Mr. Heckman was pursuant to 18 U.S.C. § 3583(d), allowing federal courts to impose conditions when those conditions are appropriate as long as those conditions do not, among other things, involve a greater deprivation of liberty than is necessary. The *Heckman* court found that "only a condition with no basis in the record, or with only the most tenuous basis, will inevitably violate § 3583(d)(2)'s command that such conditions involve no greater deprivation of liberty than is reasonably necessary." 592 F.3d at 405 (internal quotation omitted).

The West Virginia Code, like the United States Code, also allows for the imposition of conditions upon supervised release. W. Va. Code § 62-12-26(e) states that "[a] defendant sentenced to a period of supervised release shall be subject to any or all of the conditions applicable to a person placed upon probation pursuant to the provisions of section nine of this article [§ 62-12-9]." Pursuant to W. Va. Code § 62-12-9(b), a "court may impose, subject to modification at any time, any other conditions which it may deem advisable." A court's power to impose conditions upon supervised release under W. Va. Code § 62-12-26(e) is limited by the liberty protections of the United States Constitution.

20

Upon analyzing the impact of the condition imposed in *Heckman*, the Third Circuit Court of Appeals concluded that the lifetime ban on Internet use was excessive in length and too broad in coverage and that it constituted a greater deprivation of liberty than was reasonably necessary. The facts of that case, however, are distinguishable from those in the instant case. In contrast to *Heckman*, Mr. Hargus has not been banned from *all* computer or Internet usage; the condition only prohibits him using a computer or accessing the Internet in his residence. Also, the provision that Mr. Hargus challenges does not indicate that it is in effect for the remainder of Mr. Hargus's life. Finally, we note that there is good reason to restrict Mr. Hargus's computer and Internet usage in his own home: Mr. Hargus has shown a propensity for downloading sexually explicit material involving minors onto his computer, and such material that may be accessed more easily in the privacy of a home.

*Burroughs* is also distinguishable from the instant case. In *Burroughs*, the federal court found that a condition of supervised release that required the defendant to submit to monitoring of his computer use and to keep a log of his internet activity was not reasonably related to any need to provide correctional treatment to the defendant whose offense of sexual abuse of a minor did not involve use of the Internet as an instrument of his offense. In the instant case, however, Mr. Hargus's underlying offense involved downloading child pornography onto his computer. For these reasons, this Court finds that *Burroughs* does not constitute persuasive authority in deciding the instant issue.

We conclude that the facts presented in both *Heckman* and *Burroughs* are distinguishable from the case at bar. We find that while the restrictions in *Heckman* and *Burroughs* were unconstitutionally restrictive, the condition placed on Mr. Hargus does not unreasonably restrict his liberty and is reasonably related to the goals of deterrence and protection of the public.

## IV.

### CONCLUSION

In sum, this Court determines that W. Va. Code § 62-12-26(g)(3) of the extended supervision statute, which provides that a circuit court may revoke a defendant's supervised release and impose post-revocation sanctions after the court finds by clear and convincing evidence that the defendant violated a condition of his or her supervised release, does not violate constitutional principles of due process, equal protection, and double jeopardy. In addition, we find that Mr. Hargus's and Mr. Lester's post-revocation sanctions are not constitutionally disproportionate to their underlying convictions. Further, we find that the revocation of Mr. Hargus's supervised release and imposition of post-revocation sanctions are not constitutionally infirm because of a lack of notice. Finally, we find that the requirement that Mr. Hargus not reside in a residence with a computer is not a constitutional violation.

For the reasons stated above, this Court affirms the March 15, 2012, order of the Circuit Court of Kanawha County that modified the sentence of Petitioner Gabriel Hargus pursuant to W. Va. Code § 62-12-26(g)(3) in case number 12-0513.

We also affirm the June 5, 2012, order of the Circuit Court of Preston County that modified the sentence of Petitioner Robert Lee Lester pursuant to W. Va. Code § 62-12-26(g)(3) in case number 12-0833.

Case No. 12-0513 – Affirmed.

Case No. 12-0833 – Affirmed.