# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 14-1015** (Raleigh County 10-F-300)

**Tanya Jean Parker-Bowling,**
**Defendant Below, Petitioner**

**FILED**

October 16, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Tanya Jean Parker-Bowling, a registered sex offender, by counsel Shannon L. Baldwin, appeals the order of the Circuit Court of Raleigh County, entered September 11, 2014, that revoked her extended supervised release from incarceration and imposed a four-year term of incarceration for petitioner's violations of the conditions of her extended supervised release. Respondent State of West Virginia, by counsel David A. Stackpole, filed a response. On appeal, petitioner argues that the circuit court violated her constitutional rights and abused its discretion in imposing the four-year term of incarceration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner's underlying criminal action arose when she and another adult female had sexual intercourse with a fourteen-year-old boy in a bathroom at the boy's home. Petitioner was at the home for a party given by the boy's mother. Petitioner had been drinking alcohol and using pain pills and marijuana at the time of the sexual assault.

Petitioner was indicted on September 13, 2010, on three counts of sexual assault in the third degree. At petitioner's December 14, 2010 plea hearing, the circuit court explained that if it accepted petitioner's plea (1) it could sentence petitioner up to the maximum penalty; (2) she would be required to register as a sex offender for the rest of her life; and (3) following the completion of her term of incarceration, she could be placed on extended or long-term sexual offender supervision (or "supervised release"). Thereafter, petitioner pled guilty to one count of sexual assault in the third degree.

Prior to sentencing, petitioner was examined by forensic psychiatrist Douglas R. Eitel, M.D., J.D., M.B.A. Dr. Eitel opined that petitioner had a "low risk of re-offense." However, he was "concerned that she [had] little recognition of how the events may have affected the minor."

1

On February 14, 2011, the circuit court (1) sentenced petitioner to not less than one nor more than five years in prison; (2) required petitioner to register for life as a sex offender and to submit to HIV testing; and (3) ordered that, upon petitioner's release from custody, she be placed on supervised release for a period of twenty-five years. The circuit court also told petitioner that if she violated her supervised release, she could be imprisoned.

Petitioner discharged her sentence and was released from prison on or about December 17, 2012. On December 19, 2012, the circuit court entered an order allowing petitioner to live with her brother, her sister in-law, and the four children residing in their home (two of whom were petitioner's brother's step-children) because it was the only residence available to petitioner. However, on March 26, 2013, petitioner's brother contacted petitioner's Intensive Supervision Officer ("ISO") and informed him that, due to the objections of his step-children's biological father, petitioner could no longer reside in his home.

On April 2, 2013, petitioner's ISO filed a petition to revoke petitioner's extended release. The petition alleged that petitioner had violated four rules and three conditions of her supervised release, including that petitioner had left the State of West Virginia without written permission. Although petitioner initially denied the charge that she had left the State without permission, she later admitted that she had left the State. Based on that admission, the circuit court revoked petitioner's supervised release and sentenced her to six months of incarceration.[1] The circuit court also ordered that, following the completion of her incarceration, petitioner was to be placed back on supervised release under the same conditions previously ordered by the court. Petitioner served the six month sentence and, upon her September 15, 2013, release, was returned to supervised release with three months of home confinement and GPS monitoring. Petitioner was also placed in a homeless shelter as that was the only residence available to her.

About two months later, on November 25, 2013, the manager of the homeless shelter contacted petitioner's ISO and informed her that petitioner was causing problems at the shelter. In December of 2013, the shelter threatened to discharge petitioner from its program. Thereafter, on December 19, 2013, petitioner's ISO filed a second motion to revoke petitioner's extended supervision which alleged petitioner violated two rules and seven conditions of her supervised release. Specifically, the State alleged that petitioner (1) tested positive for narcotics absent a prescription for those narcotics; (2) failed to provide records showing she had enrolled in college even though she claimed she had enrolled; (3) failed to attend or to timely attend a sex offender treatment program; (4) violated her GPS monitoring requirements by breaking her curfew and by being in prohibited places; and (5) failed to obtain employment or perform community service. On January 3, 2014, petitioner admitted that she failed to attend mandatory group therapy. The circuit court found that petitioner had violated the two rules and all seven conditions, and ordered that she be incarcerated for ninety days and, upon her release, abide by all previously imposed terms of extended supervision.

---

[1] As part of an agreement between the parties, the State did not pursue the other rule and condition violations.

On March 7, 2014, five days prior to petitioner's release from her ninety-day incarceration, she signed a release acknowledging the conditions of her release and subsequent supervision. Those conditions included the proviso that, if petitioner failed to comply, she could again be incarcerated.

On April 3, 2014, petitioner's ISO filed a third revocation petition against petitioner which alleged that she violated one instruction, three rules, and three conditions of her supervised release. Petitioner (1) failed to report to her probation officer immediately upon her release from incarceration and, instead, reported almost twenty-four hours later; (2) had a positive drug screen for alcohol less than forty-eight hours after her release, but a negative screen for benzodiazepines for which she had a prescription; (3) could not account for seventy-six missing benzodiazepine pills; (4) never actually applied for any jobs even though she reported that she had done so; (5) failed to maintain a single verifiable residence given that the homeless shelter was discharging her "due to her behaviors at the shelter"; and (6) provided deceptive responses on a polygraph test regarding unreported sexual contact and illegal drug use. The circuit court convened an evidentiary hearing on the ISO's motion on July 15, 2014. By order entered September 11, 2014, the circuit court found that petitioner had violated the terms and conditions of her supervised release. The circuit court then revoked petitioner's supervised release and ordered that she be incarcerated for four years, and, upon completion of her sentence, be returned to supervised release. Petitioner now appeals the September 11, 2014, order.

Petitioner asserts ten assignments of error on appeal, some of which are duplicative. For example, petitioner's first and fourth assignments of error both argue that petitioner's four year sentence—for violations allegedly unrelated to her original offense—violated petitioner's right to due process and right to freedom from cruel and unusual punishment. Petitioner also argues that the circuit court's imposition of twenty-five years of extended supervision is wrongfully disproportionate to her underlying one to five year criminal sentence.

"The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, *State v. James*, 227 W.Va. 407, 410, 710 S.E.2d 98, 101 (2011), quoting Syl. Pt. 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E. 221 (1997).

With regard to petitioner's claim that the revocation of her supervised release was based upon technical violations that were "not related to her original offense," it appears petitioner is arguing that the revocation action was a separate criminal prosecution from her original offense. However, as this Court stated in *State v. Hargus*, 232 W.Va. 735, 753 S.E.2d 893 (2013), a revocation proceeding where incarceration is imposed is construed to be a continuation of the prosecution of the original offense. *Id.* at 742, 753 S.E.2d at 900. Therefore, petitioner's revocation action was related to her original offense and, as a result, her due process rights were not violated.

As for petitioner's claim that her twenty-five year term of supervised release is cruel and unusual, we find it to be without merit. In Syllabus Point 6 of *James*, this Court held that the extended supervision statute at "West Virginia Code § 62–12–26 [] is not facially unconstitutional on cruel and unusual punishment grounds in contravention of the Eighth

3

Amendment to the United States Constitution or Article III, § 5 of the West Virginia Constitution." 227 W. Va. at 410, 710 S.E.2d at 101.

As for petitioner's claims that her twenty-five year term of supervised release and four-year revocation term of incarceration are disproportionate to her crimes and her violations of the conditions of supervised release, this Court has held that,

> In determining whether a given sentence violates the proportionality principle. . . , consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction." Syl. Pt. 5, in part, *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981).

Syl. Pt. 5, *James*, 227 W.Va. at 410, 710 S.E.2d at 101. Here, petitioner pled guilty to the third degree sexual assault of a fourteen-year-old boy; thereafter, she was sentenced to a term of one to five years in prison and twenty-five years of supervised release. In comparison, the sexual offender in *Hargus*, who plead guilty to possession of material depicting a minor engaged in explicit conduct, received two years in prison and a thirty year term of supervised release. 232 W.Va. 739, 753 S.E.2d 897. Comparing the instant case with *Hargus*, it is evident that petitioner's twenty-five year term of supervised release was five years less than the thirty-year term of supervised release imposed upon Mr. Hargus, even though petitioner's one to five years of incarceration was potentially two and half times longer than Mr. Hargus's two year term of incarceration. Moreover, Mr. Hargus was incarcerated for five years following his *first* revocation proceeding, whereas petitioner received only a four-year sentence for her *third* revocation proceeding. Given the nature of petitioner's criminal conduct, her term of supervised release and current four-year revocation sentence are not disproportional to those imposed for "other offenses within the same jurisdiction." Therefore, petitioner fails to prove that her twenty-five year period of supervised release or four-year term of incarceration for violations of the terms of her supervised release are cruel and unusual.

Petitioner's second and seventh assignments of error both argue that West Virginia Code § 62–12–26 offends the prohibition against double jeopardy. Specifically, petitioner argues that her four-year revocation sentence is an additional sentence that violates the proscription against double jeopardy given that her underlying criminal sentence has already been discharged. Petitioner also argues that, pursuant to West Virginia Code § 62-12-26(i), the circuit court should have clarified how long petitioner will be subject to extended supervision following her release, and whether the time she has already been on extended supervision will be credited to her. Petitioner claims that the court's failure to address these issues violates her due process rights.

As for petitioner's double jeopardy argument, this Court has held that,

> [t]he imposition of the legislatively mandated additional punishment of a period of supervised release as an inherent part of the sentencing scheme for certain offenses enumerated in West Virginia Code § 62–12–26 [] does not on its

face violate the double jeopardy provisions contained in either the United States Constitution or the West Virginia Constitution.

Syl. Pt. 11, *James*, 227 W.Va. at 411, 710 S.E.2d at 102. Consequently, petitioner's double jeopardy argument fails.

With regard to the end-date of petitioner's term of extended supervision, petitioner discharged her one to five year sentence for third degree sexual assault on or about December 17, 2012, at which time her twenty-five year term of supervised release began. That term will end on or about December 17, 2037. Petitioner's term of supervised release has not been changed or modified; thus, it is still in effect. Further, petitioner has received credit for the time she has been on supervised release and for the time she was incarcerated for revocation violations. Consequently, petitioner's due process rights have not been violated.

Petitioner's third assignment of error is that the extended supervised release statute is unconstitutional given that a circuit court must impose it, regardless of whether it is appropriate. Petitioner claims that the violations resulting in her current four-year period of incarceration had nothing to do with the purpose of her supervised release, i.e., to receive sex offender treatment and to modify her behavior. Therefore, petitioner argues that the circuit court should have had the option of not imposing extended supervision in her case.

Pursuant to West Virginia Code § 62-12-26(a), the circuit court has the discretion to determine the amount of time a sex offender will remain on extended supervised release, which, depending on the crime and other factors, may be up to a period of life. Here, the circuit court determined that petitioner should serve a twenty-five year period of supervised release which is within the statutory parameters of § 62-12-26(a). As for petitioner's claim that her violations had nothing to with her original conviction, it is simply wrong. For example, during petitioner's first revocation proceeding, petitioner admitted to traveling out of state to pick up her son despite the fact that she did not have custody of him. The State has an interest in ensuring that petitioner does not leave the state without permission and an interest in petitioner's interactions with children. Petitioner's second revocation included violations related to controlled substances and her failure to attend a sex offender treatment program. Given that petitioner is a sex offender who committed her crime while under the influence of controlled substances, the State has an interest in monitoring petitioner's behavior. Finally, the violations that lead to petitioner's third revocation included those related to prohibited alcohol use and her failure to immediately report following her release from incarceration. Petitioner's underlying crime involved alcohol use. Further, the State clearly has an interest in immediately monitoring petitioner's behavior given her non-compliant behavior throughout her period of supervised release. Consequently, every one of petitioner's revocation actions was directly related to rules and conditions aimed at providing petitioner with treatment and/or modifying her behavior.

Petitioner next argues that West Virginia Code § 62-12-26 violates petitioner's right to procedural due process because (1) a jury did not hear and decide her revocation issues, and (2) the basis for the revocation was not proven beyond a reasonable doubt. Petitioner, in essence, makes the same argument as did the defendant in *James* with regard to the Supreme Court's

decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *James*, we addressed that argument as follows:

> Discussing due process in light of enhanced sentencing, the Supreme Court in *Apprendi* held that "[o]ther than a prior conviction, any fact that increases the penalty for a crime beyond the *prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490, 120 S.Ct. 2348 (emphasis added). Applying the reasoning in *Apprendi* to § 62–12–26, Mr. James . . . contend[s] that the statute violates due process by authorizing judges, without jury involvement, to enhance punishment by imposing a second sentence of up to fifty years of supervised release for felony offenses which statutorily carry a penalty of incarceration.

*James*, 227 W.Va. at 417-18, 710 S.E.2d at 108-09. However, we rejected Mr. James's arguments, as follows:

> The State maintains that the appellant[] misconceive[s] what constitutes the statutory maximum period imposed for the offenses . . . committed. The State directs us to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), wherein the U.S. Supreme Court said that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Id*. at 303, 124 S.Ct. 2531 (emphasis in the original). According to the State, no additional facts are required to be found by a court beyond the actual conviction for one of the designated offenses in order to impose a period of supervision pursuant to the terms of § 62–12–26. We agree.
>
> As we observed at the outset of our discussion, § 62–12–26(a) reflects the legislative intent to impose a new and additional penalty to the sentence of a person convicted of certain enumerated offenses. The statute clearly states that "any defendant convicted . . . [of the listed felony offenses] shall, *as part of the sentence imposed at final disposition*, be required to serve, *in addition to any other penalty or condition* imposed by the court, a period of supervised release. . . ." W.Va. Code § 62–12–26(a) (emphasis added). Consequently, the statute does not offend due process as it provides that the existing sentences in the statutes defining the elements of the listed felony offenses be combined with the supervised release statute to form the statutory maximum sentence for each of these crimes. In order to impose a period of supervised release pursuant to § 62–12–26, a court need make no additional findings beyond the indisputable fact that a conviction for one of the designated offenses has occurred. As such, there is no new factual issue for a jury to decide. The length of time imposed is within the trial judge's discretion.
>
> We likewise find no merit in the proposition that due process requires jury involvement whenever a sentencing judge considers the facts surrounding the conviction in order to determine an appropriate sentence. The Supreme Court in

*Apprendi* stated that there is nothing that "suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." 530 U.S. at 481, 120 S.Ct. 2348 (emphasis in original). As related by the Second Circuit Court of Appeals in *United States v. White*, 240 F.3d 127, 136 (2nd Cir.2001), where factual determinations are "used to sentence the defendant to a sentence within the maximum allowed by statute, *Apprendi* is not controlling, and such determinations can be made by the court without violating the defendant's right to due process."

*James*, 227 W.Va. at 418, 710 S.E.2d at 109. Thus, for the reasons set forth above, we find that the circuit court did not abridge petitioner's procedural due process rights even though (1) a jury did not hear and decide petitioner's revocation issues, and (2) the State did not necessarily prove petitioner's violations beyond a reasonable doubt.

Petitioner' sixth assignment of error is that West Virginia Code § 62-12-26 violates her right to due process because the rules petitioner violated were improperly vague. Specifically, petitioner claims that the rule to "immediately contact" her ISO was arbitrary, capricious, and vague given that her ISO officer did not define "immediately contact." Therefore, petitioner claims that any punishment resulting from her failure to "immediately contact" is a violation of her due process rights. Petitioner also argues (1) that there was no valid reason for petitioner to immediately contact her probation officer, (2) that she had never had to do so before, and (3) that others released to probation do not have this requirement. Finally, petitioner claims that she was subject to rules beyond the "normal range."

With regard to petitioner's vagueness argument, she does not claim that West Virginia Code §62-12-26 is vague; instead, she argues that her ISO's instructions were vague. That said, the record on appeal provides that petitioner's ISO could not give petitioner an exact time to report because it was unclear when petitioner would be released from jail; thus, he used the term "immediately." We find that term, as it is commonly used, not to be vague. Nor could any reasonable definition of "immediately" be construed to mean almost twenty-four hours later, which is the time it took petitioner to report to her ISO. Accordingly, we find that the circuit court did not err in finding that the ISO's instructions did not violate petitioner's due process rights.

With regard to petitioner's claim that "others" released to probation are not required to report "immediately," petitioner fails to identify these "others" or to explain why the rules applied to these "others" are, in any way, relevant to petitioner. As for petitioner's claim that she was subject to rules and conditions that went beyond the "normal range," she fails to state which rules and conditions she is addressing and fails to list those rules and conditions which fall within the "normal range." Therefore, petitioner fails to support, in any fashion, her claims related to this portion of her assignment of error.

Petitioner next argues that the trial court abused its discretion by sentencing petitioner to prison for violating the rules regarding her supervised release where petitioner's three revocation petitions were filed only after petitioner lost her housing. Therefore, petitioner claims that her

current incarceration is discriminatory and violates due process because it is based *primarily* on the fact that she cannot afford housing.

We first note that petitioner's lack of housing was only one of the violations noted in each of petitioner's three revocation proceedings. Further, her lack of housing was only one of many serious violations alleged against petitioner. Moreover, at petitioner's third revocation hearing, the State entered evidence showing that petitioner had committed each of the violations charged. Therefore, the record on appeal clearly shows that petitioner's lack of housing was caused primarily by her own refusal to comply with the terms of supervised release.[2] Merely because petitioner countered that testimony with her own testimony does not mean that the State failed to meet its burden of proof. Here, the circuit court weighed the evidence and, in its discretion, found sufficient evidence to impose a four-year term of incarceration. Following our careful review of the record on appeal, including a review of the transcripts from petitioner's revocation proceedings, we concur with the circuit court's conclusions. Accordingly, we find that petitioner's incarceration was not based on discriminatory reasons and, therefore, did not violate her right to due process.

Petitioner's final assignment of error is a compendium of all the assignments of error discussed above. Therefore, given that we have found no error herein, we decline to address it further.

Accordingly, for the foregoing reason, we affirm the circuit court's order.

Affirmed.

**ISSUED:** October 16, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**AFFIRM IN PART, REVERSE IN PART, AND REMAND:**

Justice Robin Jean Davis

**DISSENTING:**

Justice Menis E. Ketchum

---

[2] We note the exception that petitioner lost her first placement, at her brother's home, due to the objections of her brother's step-children's father.